Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC, <br><br> *Plaintiff* <br><br> v. <br><br> WWW.SQUISHMALLOW-OFFICIAL.COM, WWW.PAPCOOL.NET, PAPCOOL, NGUYEN TIEN and VIET LIFE TV LLC d/b/a WWW.VIETLIFETV.NET, <br><br> *Defendants* | **CIVIL ACTION No. ___** <br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Kelly Toys** | Kelly Toys Holdings, LLC |
| **Defendants** | www.squishmallow-official.com, www.papcool.net, PAPCOOL, Nguyen Tien and VIET LIFE TV LLC d/b/a www.vietlifetv.net |
| **Shopify** | Shopify Inc., a Canadian company with an address of 150 Elgin Street, 8th Floor, Ottawa, ON K2P 1L4, Canada, and any and all affiliated companies, which operate a cloud-based e-commerce platform, available at www.shopify.com, that enables users to create online stores, manage their businesses, among other things |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendants' Websites (as defined *infra*), User Account, Merchant Storefront and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Kelly Dec.** | Declaration of Jonathan Kelly in Support of Plaintiff's Application |
| **Futterman Dec.** | Declaration of Danielle S. Futterman in Support of Plaintiff's Application |
| **Squishmallows Applications** | U.S. Trademark Serial Application Nos. 88/471,796 for "SQUISHMALLOWS HUGMEES" for goods in Class 28; 90/676,140 for "ORIGINAL SQUISHMALLOWS" for goods in Class 28 |
| **Squishmallows Registrations** | U.S. Trademark Registration Nos. 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; and |

|  | 2,029,047 for "KELLYTOY" for goods in Class 28 |
| --- | --- |
| **Squishmallows Marks** | The marks covered by the Squishmallows Registrations and Squishmallows Application |
| **Squishmallows Works** | The works covered by the U.S. copyright registrations listed in Exhibit C to the Complaint |
| **Squishmallows Products** | A line of loveable buddies made with a super soft, marshmallow-like texture that come in a variety of sizes from 3.5 inch clip-ons to extra large 24 inch plush toys, and include styles such as Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows |
| **Counterfeit or Infringing Products** | Products bearing or used in connection with the Squishmallows Marks and/or Squishmallows Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works and/or products that are identical or confusingly or substantially similar to the Squishmallows Products |
| **Defendants' Websites** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.squishmallow-official.com, www.papcool.net and www.vietlifetv.net with the domain names associated therewith |
| **Infringing Doman Name** | www.squishmallow-official.com |
| **User Accounts** | Defendants' accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendant's Merchant Storefront** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit |

| | |
|---|---|
| | Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by Defendants or Defendants' Websites (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PingPong Global Solutions, Inc. ("PingPong") and Stripe Payments Canada, Ltd. ("Stripe") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants |
| **Third Party Service Providers** | Any third party providing services in connection with Defendants' Infringing Products and and/or Defendants' Websites, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts such as Amazon.com, Inc. and Shopify, domain name registrars, such as Amazon Registrar, Inc. ("Amazon"), Cloudflare, Inc. ("Cloudflare") and GoDaddy.com, LLC ("GoDaddy"), and domain name registries |

Plaintiff by and through its undersigned counsel, alleges as follows:[1]

## NATURE OF THE ACTION

1.     This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); trademark infringement of Plaintiff's unregistered trademarks in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, cybersquatting in violation of the Anticybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)) and related state and common law claims, arising from the infringement of the Squishmallows Marks and Squishmallows Works, including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Squishmallows Products on Defendants' Websites and Defendants' Merchant Storefront.

## JURISDICTION AND VENUE

2.     This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail itself of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through Defendants' Websites and online marketplace platforms such as Amazon as well as any and all yet undiscovered User Accounts, through which consumers in the U.S., including New York, can place orders for, receive invoices for, and purchase Infringing Products for delivery in the U.S., including New York, as a means of establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, operating one or more commercial businesses through Defendants' Websites and User Account(s), using Defendants' Websites and Merchant Storefront to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or selling Counterfeit Products at significantly

below-market prices to consumers worldwide, including to consumers in the U.S., and specifically in New York.

        c.      Upon information and belief, Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

        d.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

        e.      Upon information and belief, Defendants are aware of Plaintiff, its Squishmallows Products, Squishmallows Marks and Squishmallows Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants' conduct, transact and/or solicit business in this judicial district, are subject to personal jurisdiction in this judicial district, a substantial part of the events or omissions giving rise to the asserted counts occurred in this judicial district, and/or harm to Plaintiff has occurred in this judicial district.

<u>**THE PARTIES**</u>

5.      Plaintiff is a limited liability company with a principal place of business at 4811 South Alameda Street, Los Angeles, CA 90058.

6.      Upon information and belief, Defendant www.squishmallow-official.com (hereinafter referred to as "squishmallow-official") is an individual or entity, believed to be located in Vietnam, that owns and/or operates Defendants' Website available [www.squishmallow-official.com](www.squishmallow-official.com).

7.      Upon information and belief, Defendant www.papcool.net (hereinafter referred to as "papcool.net") is an individual or entity, believed to be located in Vietnam, that owns and/or operates

Defendants' Website available www.papcool.net.

8.      Upon information and belief, Defendant PAPCOOL (hereinafter referred to as "PAPCOOL") is a merchant on the Amazon online platform through which Defendant(s) offer for sale and/or sell Counterfeit Products.

9.      Upon information and belief, Defendant Nguyen Tien (hereinafter referred to as "Tien"), is an individual, over the age of eighteen (18), believed to be located in Vietnam, that owns and/or operates Defendants' Websites and Merchant Storefront.

10.      Upon information and belief, Defendant VIET LIFE TV LLC (hereinafter referred to as "VIET LIFE") is a limited liability company organized and existing under the laws of the State of California, located at 15609 Beach Blvd., Westminster, CA 92683, that owns and/or operates Defendants' Website available at www.vietlifetvllc.com.

11.      Upon information and belief since the time of their creation, now, and all times relevant to this Action such a unity of interest and ownership existed between Defendants, such that separate personalities did not and do not in reality exist based on the fact that Defendants' Website squishmallow-official.com previously redirected visitors to www.vietlifetvllc.com, now www.vietlifetvllc.com redirects visitors to Defendants' Website www.papcool.net, Defendants' Website www.squishmallow-official.com redirects visitors to www.papcool.net, Defendants' Websites sell the same gardening products and plush toys as Defendants' PAPCOOL Merchant Storefront, and Defendant Tien is listed as the owner of two trademarks associated with two of Defendants' Websites and Merchant Storefront,.

## **GENERAL ALLEGATIONS**
### **Plaintiff and Its Well-Known Squishmallows Products**

12.      Founded in 1986, Kelly Toys is one of the world's most influential, leading manufacturers and distributors of high-quality plush toys and gifts which is known for its best-selling

brands, including Pillow Chums, Kellybaby and Kellypet, among others.

13.     Kelly Toys sells its Kelly Toys Products in major retailers, department stores and online marketplaces, including but not limited to Walmart, Justice, Target and Amazon.

14.     One of the most popular Kelly Toys Brands is Squishmallows, a line of loveable buddies made with a soft marshmallow-like texture that come in a variety of sizes from 3.5 inch clip-ons to extra-large 24 inch plush toys.  The Squishmallows Products have expanded to include other styles such as Hug Mees, Stackables, Mystery Squad and Flip-A-Mallows.  Images of the Squishmallows Products are attached hereto as **Exhibit A** and incorporated herein by reference.

15.     Since their debut in 2017, over 73 million Squishmallows Products have been sold worldwide, and sales of Squishmallows have tripled in the past six months.[2]

16.     In 2020, Squishmallows were awarded "Best Toy of the Year" by Learning Express.[3]

17.     Squishmallows Products are sold by major U.S. retailers and e-commerce sites, such as Amazon, Target and Walmart.

18.     Squishmallows Products typically retail for between $7.99-44.99.

19.     While Kelly Toys has gained significant common law trademark and other rights in its Squishmallows Products, through its and/or its predecessor's use, advertising and promotion, Kelly Toys has also protected its valuable rights by filing for and/or obtaining federal trademark registrations.

20.     For example, Kelly Toys is the owner of the Squishmallows Registrations (i.e., U.S. Trademark Registration Nos. 6,137,521 for "FLIP A MALLOWS" for goods in Class 28; 5,454,574 for "SQUISHMALLOW" for goods in Class 28; 5,962,289 for "MYSTERY SQUAD" for goods in Class 28; and 2,029,047 for "KELLYTOY" for goods in Class 28). Kelly Toys also applied for the

---

[2]    Taylor Lorenz, *Squishmallows Are Taking Over*, NEW YORK TIMES (Mar. 16, 2021), https://www.nytimes.com/2021/03/16/style/squishmallows.html.
[3] aNb Media, *Squishmallows Named 2020 Best Toy of the Year by Learning Express*, ANB MEDIA, INC. (Oct. 2020), https://www.anbmedia.com/news/2020/10/squishmallows-named-2020-best-toy-of-the-year-by-learning-express/.

registration of "SQUISHMALLOWS HUGMEES", which is covered by the Squishmallows Application (i.e. U.S. Trademark Serial Application No. 88/471,796 for goods in Class 28).  Copies of the Squishmallows Registrations and Squishmallows Application are attached hereto as **Exhibit B** and incorporated herein by reference.[4]

21.    The Squishmallows Marks are currently in use in commerce in connection with Squishmallows Products.  The Squishmallows Marks were first used in commerce on or before the dates of first use as reflected in the Squishmallows Registrations attached hereto as part of **Exhibit B**.

22.    In addition, Kelly Toys is also the owner of unregistered and registered copyrights in and related to the Squishmallows Products.

23.    For example, Kelly Toys owns the Squishmallows Works, and the U.S. copyright registrations covering the same, which are listed in **Exhibit C**.[5]

24.    The success of the Squishmallows Products is due in part to Plaintiff and its predecessor's marketing and promotional efforts.  These efforts currently include advertising and promotion through social media, the Squishmallow's website (available at https://squishmallows.com/) and other advertising, among other efforts domestically and abroad, including in New York.

25.    Plaintiff's success is also due to its use of the highest quality materials and processes in making the Squishmallows Products, which meet or exceed U.S. standards.

26.    Additionally, Plaintiff owes a substantial amount of the success of the Squishmallows Products to their consumers and word-of-mouth buzz that its consumers have generated.

27.    Plaintiff and its predecessor's efforts, the quality of its Squishmallows Products, its

---

[4] Although two of the Squishmallows Registrations list Plaintiff's predecessor, Kellytoy Worldwide, Inc. on the certificates of registration, the assignments on file with the United States Patent and Trademark Office (the "USPTO") unequivocally evidence that Plaintiff is in fact the current true and correct owner of all of the Squishmallows Registrations.  True and correct copies of the trademark assignments, as filed with the USPTO, are included as part of **Exhibit B**.
[5] Although the registrations for the Squishmallows Works also list Plaintiff's predecessor Kellytoy Worldwide, Inc. as the copyright claimant, Kellytoy Worldwide, Inc. assigned all rights in and to the Squishmallows Works to Kelly Toys, and Plaintiff is in fact the true and correct owner thereof.

marketing, promotional and distribution efforts, as well as the word-of-mouth buzz generated by its consumers, have made the Squishmallows Products, Squishmallows Marks and Squishmallows Works prominently placed in the minds of the public. Members of the public have become familiar with the Squishmallows Marks, Squishmallows Works and Squishmallows Products, and have come to associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such associations.

28.    Plaintiff has gone through great lengths to protect its interests in the Squishmallows Marks, Squishmallows Works and Squishmallows Products.  No one other than Plaintiff is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Squishmallows Marks and Squishmallows Works without the express permission of Plaintiff.

### Amazon and Defendants' User Account(s)

29.    Amazon is an online marketplace and e-commerce platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from Vietnam directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

30.    Amazon is recognized as one of the leaders of the worldwide e-commerce and digital retail market and was projected to generate approximately $258.22 billion in U.S. retail e-commerce sales in 2018, nearly half the U.S. e-commerce market.[6] Sales to the U.S. make up a significant percentage of the business done on Amazon.[7] Currently, Amazon is valued at over $797 billion, which is the largest market value of a public company in the U.S.[8]

31.    As of 2018, third-party merchants have sold over $160 billion in merchandise through

---

[6] *See* eMarketer Editors, *Amazon Now Has Nearly 50% Of Us Ecommerce Market*, eMarketer.com (Jul. 16, 2018), https://www.emarketer.com/content/amazon-now-has-nearly-50-of-us-ecommerce-market.
[7] *See* Amazon.com, Inc., Annual Report (Form 10-K) (Jan. 31, 2018).
[8]*See* Lauren Feiner, *Amazon is the most valuable public company in the world*, CNBC, https://www.cnbc.com/2019/01/07/amazon-passes-microsoft-market-value-becomes-largest.html/.

User Accounts on Amazon.[9]  Third-party merchant sales account for half of the volume of all products sold on Amazon. [10]

32.    Amazon aggressively uses the Internet and television, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  In 2018 alone, Amazon spent approximately $3.4 billion on marketing. [11]

33.    As recently addressed in news reports,[12] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Amazon,[13] an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate. [14]

34.    Defendants are individuals and/or businesses, who, upon information and belief, are located in Vietnam and/or California but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefront(s) on Amazon, along with Defendants' Websites, as well as potentially yet undiscovered additional online marketplace platforms.

35.    Through their Merchant Storefront, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

36.    Defendants are in constant communication with each other and regularly participate in

---

[9] *See* Juozas Kaziukenas, *Amazon Gross Merchandise Volume $277 Billion in 2018,* Marketplace Pulse (April 12, 2019), https://www.marketplacepulse.com/articles/amazon-gross-merchandise-volume-277-billion-in-2018.
[10] *See* Parmy Olson, *Meet The Billionaire Who Defied Amazon And Built Wish, The World's Most-Downloaded E-Commerce App*, Forbes (March 13, 2019), https://www.forbes.com/sites/parmyolson/2019/03/13/meet-the-billionaire-who-defied-amazon-and-built-wish-the-worlds-most-downloaded-e-commerce-app/#da45b4d70f52.
[11] *See Amazon: Ad Spend in the U.S. 2017*, Statistic, https://www.statista.com/statistics/192254/us-ad-spending-of-amazon/ (last visited Apr. 17, 2019).
[12] *See* Louise Matsakis, *Amazon Wants Brands to Fight Fake Products Themselves,* Wired (Mar. 1, 2019), https://www.wired.com/story/amazon-fake-products-project-zero/.
[13] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Diamler AG v. Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).
[14] *See* Steve Brachmann, *Amazon's Counterfeit Problem is a Big One-for Shareholders, Brand Owners and Consumers Alike,* IP Watchdog (Feb. 27, 2019), http://www.ipwatchdog.com/2019/02/27/amazons-counterfeit-problem-big-one-for-everyone/id=106710/.

online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## Defendants' Wrongful and Infringing Conduct

37.     Particularly in light of Plaintiff's success with its Squishmallows Products, as well as the reputation they have gained, Plaintiff and its Squishmallows Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Squishmallows Products, Squishmallows Marks and Squishmallows Works and Plaintiff investigates and enforces against such activities.

38.     Through Plaintiff's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: 1) manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling Infringing Products bearing or used in connection with one or more of the Squishmallows Marks and/or Squishmallows Works, and/or in packaging and/or containing labels and/or hang tags bearing the Squishmallows Marks and/or Squishmallows Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks and/or Squishmallows Works, and/or that are identical or confusingly or substantially similar to the Squishmallows Products to U.S. consumers, including those located in the State of New York, through Defendants' Websites; and/or 2) using one or more of the Squishmallows Marks and/or reproducing, displaying and/or distributing the Squishmallows Works, or marks or works are confusingly or substantially similar thereto, on Defendants' Websites and on Defendants' Merchant Storefront.  True and correct printouts of Defendants' Websites, Defendants' Merchant Storefront and examples of Defendants' listings for Infringing Products are attached hereto as **Exhibit C** and incorporated herein by reference.

39.     Through Defendants' Websites and Merchant Storefront – which indicate prices in U.S.

dollars, and accept payment via PayPal or credit card – Defendants offer for sale and/or sell consumer products, including Infringing Products, and target and ship the same to customers located in the U.S., including New York, and throughout the world.

40. Defendants' Infringing Products listed on Defendants' Websites and Merchant Storefront are nearly identical to Plaintiff's Squishmallows Products, only with minor variations that no ordinary consumer would recognize.

41. For example, side-by-side comparisons of examples of images of the Infringing Products available on each of Defendants' Websites and Merchant Storefront are attached hereto as **Exhibit D** and incorporated by reference.

42. Additionally, many of the Infringing Products on Defendants' Websites and Merchant Storefront infringe one or more of Plaintiff's Squishmallows Marks and/or bear the same character names as the Squishmallows Products. For example, Defendants' Website www.papcool.net titles the below Infringing Product as "Official **Squishmallows** 8" **Francis The Lion** Plush Stuffed Animal Toy" (emphasis added) and Plaintiff has copyrighted the below character under U.S Copyright Reg. No. VA 2-183-865, covering "Francis Lion (Zoo Collection)".



| Counterfeit Product Image on Defendant Website | Image of Plaintiff's Authentic Squishmallows Product |
|---|---|

*See also*, **Exhibit D** and **Exhibit E**.

43. Likewise, Defendants' Website www.vietlifetvllc.com titles the below Infringing

Product as "Duck Plush Toy 8" Cute Duck Stuffed Animal Plush Toy Kawaii Duck Plush Pillow Kawaii Plush Duck Plushie **Avery The Mallard Duck** Plush Back Cushion" (emphasis added), and Plaintiff has copyrighted the below character under U.S Copyright Reg. No. VA 2-173-090, covering "Avery Mallard Duck".



| **Counterfeit Product Image on Defendant Website** | **Image of Plaintiff's Authentic Squishmallows Product** |
|---|---|

*See also*, **Exhibit D** and **Exhibit E**.

44.    Examples of images of Infringing Products from each of Defendants' Websites and Defendants' Merchant Storefront are attached hereto as **Exhibit E** and incorporated by reference.

45.    In order to further investigate Defendants' infringing and illegal activities, Epstein Drangel purchased Infringing Products from Defendants' Merchant Storefront, and specified the New York Address as the shipping address. True and correct redacted copies of Epstein Drangel's order confirmation and PayPal receipt for its test purchases, evidencing that these transactions were in U.S. dollars, and that Defendants agreed to ship and actually shipped Infringing Products to New York, are attached hereto as part of **Exhibit E** and incorporated herein by reference.

46.    Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Squishmallows Products or to use the Squishmallows Marks and/or Squishmallows Works, or any marks or works that are confusingly or substantially similar to the

Squishmallows Marks and/or Squishmallows Works.

47.     By their actions, as outlined herein, Defendants have violated Plaintiff's exclusive rights in the Squishmallows Marks and/or Squishmallows Works, and have used marks that are confusingly or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Squishmallows Marks and/or Squishmallows Works in order to confuse consumers into believing that Defendants' Websites and Merchant Storefront are associated with Plaintiff and/or Defendants' Infringing Products are Plaintiff's Squishmallows Products and aid in the promotion and sales of Defendants' Infringing Products.

48.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive rights in the Squishmallows Marks and/or Squishmallows Works, and have used marks and/or artwork that are confusingly similar to, identical to, substantially similar to and/or constitute counterfeiting and/or infringement of the Squishmallows Marks and/or Squishmallows Works in order to confuse consumers into believing that such Counterfeit Products are the Squishmallows Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiff's adoption and use of the Squishmallows Marks and/or Squishmallows Works, after Plaintiff obtained a federal registration in the Squishmallows Marks and Squishmallows Works, as alleged above, and after Plaintiff's Squishmallows Products, Squishmallows Marks and Squishmallows Works became well-known to the purchasing public.

49.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Squishmallows Marks and Squishmallows Works, of the fame and incalculable goodwill associated therewith and of the popularity

and success of the Squishmallows Products, and in bad faith adopted the Squishmallows Marks and/or Squishmallows Works.

50.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Squishmallows Marks, Squishmallows Works and Squishmallows Products.

51.    Defendants' dealings in Infringing Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Infringing Products, thereby causing consumers to erroneously believe that such Infringing Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

52.    By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Squishmallows Marks and/or Squishmallows Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

53.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**

54.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

55.    Plaintiff is the exclusive owner of all right and title to the Squishmallows Registrations.

56.    Plaintiff and its predecessor have continuously used the Squishmallows Registrations in

interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

57.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Squishmallows Registrations and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Squishmallows Registrations and/or used spurious designations that are identical with, or indistinguishable from, the Squishmallows Registrations on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

58.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Squishmallows Registrations through their participation in such activities.

59.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Squishmallows Registrations to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

60.      Defendants' unauthorized use of the Squishmallows Registrations on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Squishmallows Registrations.

61.      Defendants' actions constitute willful counterfeiting of the Squishmallows Registrations in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

62.      As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Squishmallows Registrations and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Squishmallows Registrations.

63.      Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

64.      Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

65.      Plaintiff and its predecessor have continuously used the Squishmallows Registrations in

interstate commerce since on or before the date of first use as reflected in the registration certificates attached hereto as **Exhibit B**.

66.    Plaintiff, as owner of all right, title and interest in and to the Squishmallows Registrations, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

67.    Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registration for the Squishmallows Registrations.

68.    Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Squishmallows Registrations, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the Squishmallows Products and/or related products bearing the Squishmallows Registrations into the stream of commerce.

69.    Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Squishmallows Registrations and/or which are identical or confusingly similar to the Squishmallows Registrations.

70.    Defendants knowingly and intentionally reproduced, copied and colorably imitated the Squishmallows Registrations and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

71.    Defendants were, at the time they engaged in their illegal and infringing actions as

alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Squishmallows Registrations.

72. Defendants' egregious and intentional use of the Squishmallows Registrations in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Squishmallows Products or are otherwise associated with, or authorized by, Plaintiff.

73. Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Squishmallows Registrations, as well as with bad faith and the intent to cause confusion, mistake and deception.

74. Defendants' continued, knowing, and intentional use of the Squishmallows Registrations without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Squishmallows Registrations in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

75. As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Squishmallows Registrations and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Squishmallows Registrations.

76. Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants'

unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by

Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by

15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Infringement of Unregistered Trademark)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**

77.    Plaintiff repleads and incorporates by reference each and every allegation set forth in

the preceding paragraphs as if fully set forth herein.

78.    Plaintiff and its predecessor have continuously used the Squishmallows Application in

interstate commerce since on or before the date of first use as reflected in the application attached hereto

as Exhibit B.

79.    Plaintiff, as the owner of all right, title and interest in and to the Squishmallows

Application, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

80.    Defendants were, at the time they engaged in their actions as alleged herein, actually

aware that Plaintiff is the owner of the Squishmallows Application.

81.    Defendants did not seek, and therefore necessarily failed, to obtain consent or

authorization from Plaintiff, as the trademark owner of the Squishmallows Application, to deal in and

commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer

for sale and/or sell Squishmallows Products and/or related products bearing the Squishmallows

Application into the stream of commerce.

82.    Defendants knowingly and intentionally manufactured, imported, exported, advertised,

marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing

and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Squishmallows

Application and/or which are identical or confusingly similar to the Squishmallows Application.

83.    Defendants knowingly and intentionally reproduced, copied and colorably imitated the

18

Squishmallows Application and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

84.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Squishmallows Application.

85.     Defendants' egregious and intentional use of the Squishmallows Application in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Squishmallows Products or are otherwise associated with or authorized by Plaintiff.

86.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Squishmallows Application, as well as with bad faith and the intent to cause confusion, mistake and deception.

87.     Defendants' continued, knowing and intentional use of the Squishmallows Application without Plaintiff's consent or authorization constitutes intentional infringement of the Squishmallows Application in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

88.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Squishmallows Application and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate

remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Squishmallows Application.

89.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

90.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91.     Plaintiff, as the owner of all right, title and interest in and to the Squishmallows Marks has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

92.     The Squishmallows Marks are inherently distinctive and/or have acquired distinctiveness.

93.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Squishmallows Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Squishmallows Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed

or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Squishmallows Marks, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

94.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Squishmallows Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Squishmallows Marks, Defendants have traded off the extensive goodwill of Plaintiff and its Squishmallows Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Squishmallows Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

95.    Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the Squishmallows Marks would cause confusion, mistake or deception among purchasers, users and the public.

96.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Squishmallows Products and Squishmallows Marks.

97.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Squishmallows Products and by depriving Plaintiff of the value of its Squishmallows Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of the Squishmallows Marks.

98.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Cybersquatting Under the Anticybersquatting Consumer Protection Act)**
**[15 U.S.C. § 1125(d)(1)]**

99.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

100.    The Infringing Domain Name is identical or confusingly similar to one or more of the Squishmallows Marks, which were distinctive and/or famous at the time Defendants registered the Infringing Domain Name.

101.    Defendants registered and used the Infringing Domain Name with the bad faith intent to profit from the Squishmallows Marks, namely by using the Infringing Domain Name to host Defendant's Website www.squishmallow-official.com where Defendants offer for sale and/or sell Counterfeit Products.

102.    Defendants have no trademark or other intellectual property rights in the Infringing Domain Name.

103.    Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1).

104.    Plaintiff has no adequate remedy at law, and if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

105.    Defendants are causing and are likely to continue to cause substantial injury to the public and to Plaintiff, and Plaintiff is therefore entitled to injunctive relief, including an order requiring the transfer of the Infringing Domain Name to Plaintiff and to recover the costs of this action under 15 U.S.C. § 1116, 1117 and 1125(d).  In light of the egregious and exceptional nature of Defendants' conduct, Plaintiff is further entitled to its reasonable attorneys' fees.

### SIXTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

106.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

107.    Plaintiff is the exclusive owner of the Squishmallows Works.

108.    Defendants had actual notice of Plaintiff's exclusive rights in and to the Squishmallows Works.

109.    Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Squishmallows Products and/or Squishmallows Works.

110.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Squishmallows Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products which bear such Squishmallows Works, or artwork that is, at a minimum, substantially similar to the Squishmallows

Works.

111.    Defendants' unlawful and willful actions as alleged herein constitute infringement of the Squishmallows Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Squishmallows Works in violation of 17 U.S.C. § 501(a).

112.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

113.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

114.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115.    By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Squishmallows Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

116.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for

sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

117.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

118.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

119.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Squishmallows Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Squishmallows Marks and Squishmallows Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

120.    As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Squishmallows Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Squishmallows Works under 17 U.S.C. § 501(a);

F.    For an order transferring the Infringing Domain Name to Plaintiff pursuant to 15 U.S.C. §

1125(d)(1)(C);

G.    In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Squishmallows Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

H.    For an award of damages to be proven at trial for common law unfair competition;

I.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    ii.  directly or indirectly infringing in any manner any of Plaintiff's Squishmallows Marks and Squishmallows Works;

    iii.  using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Squishmallows Marks and Squishmallows Works, to identify any goods or services not authorized by Plaintiff;

    iv.  using any of Plaintiff's Squishmallows Marks or Squishmallows Works, or any other marks or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting,

distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.  engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii. engaging in any other actions that constitute unfair competition with Plaintiff;

viii. engaging in any other act in derogation of Plaintiff's rights;

ix.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' Websites, User Account(s) or Merchant Storefront(s), Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or

28

paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii. providing services to Defendants, Defendants' User Account(s) and Defendants' Merchant Storefront(s), including, without limitation, continued operation of Defendants' User Account(s) and Merchant Storefront(s);

xiii. operating Defendant's Websites;

xiv. registering, trafficking in or using any domain names that incorporate any of Plaintiff's Squishmallows Marks, or any colorable imitation thereof, including the Infringing Domain Name; and

xv. instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xiv) above; and

J.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's Squishmallows Marks or Squishmallows Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works;

K.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of

Defendants that infringe any of Plaintiff's Squishmallows Marks or Squishmallows Works, or bear any marks and/or artwork that are confusingly or substantially similar to the Squishmallows Marks or Squishmallows Works pursuant to 15 U.S.C. § 1118;

L.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

M.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

N.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.      For Plaintiff's reasonable attorneys' fees;

P.      For all costs of suit; and

Q.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a trial by jury on all claims.

Dated: October 13, 2021                     Respectfully submitted,

                                            EPSTEIN DRANGEL LLP

                                            BY: _____
                                            Danielle S. Futterman (DY 4228)
                                            dfutterman@ipcounselors.com

Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Kelly Toys Holdings, LLC*

31